UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
BUFFALO DIVISION

| | | |
|---|---|---|
| JONATHAN MANGEL, | § § § | |
| *Plaintiff*, | § § | Civil Action No. 1:25-cv-95 |
| v. | § § | JURY REQUESTED |
| CRANESVILLE BLOCK CO., INC., | § § § | |
| *Defendant*. | § § § | |

Plaintiff Jonathan Mangel ("Plaintiff"), by his counsel, Harman Green PC, alleges for his Complaint against Defendant Cranesville Block Co., Inc., ("Defendant") as follows:

## PRELIMINARY STATEMENT

1. This case is about repeated, ongoing discrimination.

2. Plaintiff's coworker, Gary Halstead, repeatedly subjected Plaintiff to a hostile and offensive work environment, and submitted video footage of himself to Plaintiff making the harassing statements.

## JURISDICTION

3. Pursuant to 28 U.S.C. §1331 this Court may properly hear Plaintiff's claims as they arise under a federal statute.

4. Pursuant to 28 U.S.C. §1367 this Court may properly hear Plaintiff's State and local law claims as they arise out of the same nucleus of operative fact so as to create the same case or controversy.

5. Plaintiff timely filed with the Equal Employment Opportunity Commission, Charge number 525-2024-00632, and received a Right to Sue letter on December 9, 2024. This case was filed within 90 days of receipt of that Right to Sue Letter.

## PARTIES

6. Plaintiff was and is a resident of New York, NY.

1

7. Defendant CRANESVILLE BLOCK CO., INC. has a registered address with the State of New York at 1250 Riverfront Center, Amsterdam, New York, 12010.

8. Venue is appropriate in Buffalo as Plaintiff was employed in Defendant's Buffalo office at 400 Pfohl Rd, Buffalo, NY 14225 and any relevant witnesses or documents are held at that location.

## JURY DEMAND

9. Plaintiff respectfully requests a trial by jury.

## STATEMENT OF FACTS

10. Plaintiff was hired to work for Defendant as a cement truck driver on June 6, 2022.

11. Early on in his employment, Plaintiff made known to his supervisors that he was disabled and his supervisors regarded him as disabled.

12. Plaintiff suffers from Neuropathy, also known as 'drop foot,' a disability that impairs his ability to walk properly, which is a major life function.

13. Plaintiff informed his managers both verbally and via text message (reproduced below) about his disability and his occasional need to visit a doctor.

14. It was not a secret that Plaintiff has a disability, multiple coworkers, including an ex-mechanic named Wayne and a driver named Shana, knew Plaintiff had a disability.

15. Plaintiff did not request an accommodation, nor was one necessary for Plaintiff to complete his employment.

16. Rather, Plaintiff merely needed intermittent time off work for doctor meetings, which was usually granted.

17. Further, Plaintiff's disability was open and notorious, and known to colleagues and managers alike, even absent Plaintiff's express manifestation that he has a disability.



18.

19. Plaintiff was, however, harassed by a coworker, Mr. Halstead, who went by the fictious name 'George' as a means to harass Plaintiff.

20. Mr. Halstead was first hired in September or October of 2022.

21. Mr. Halstead would make TikTok videos mocking Plaintiff, videos that managers, including Dave Sharp, were aware of.

22. Mr. Halstead would use the character 'George' to harass Plaintiff by calling him "Floppy Foot" and by mocking the way Plaintiff walked.

23. This happened perpetually, and Plaintiff was subjected to a constant stream of torment from Mr. Halstead.

24. Plaintiff complained to management, including Dave and a dispatch manager named Mike, about Mr. Halstead, and the response was that 'that's just George' or 'he's just kidding'.

25. Plaintiff was never afforded any opportunity to be free from the harassment as his

managers would either turn a blind eye to the harassment or simply did not care.

26. Mr. Halstead once drew a picture of a naked woman with extremely large feet and titled it "Mrs. Floppy Foot" and placed it in Plaintiff's cement truck that he operated.

27. Mr. Halstead would walk past Plaintiff like a clown while slapping his feet on the ground.

28. In Mach 2023, Plaintiff complained directly to Diane Swenyee in human resources, and sent her multiple videos of the harassing conduct.

29. Despite three senior leaders, Dave, Mike, and Steve, all dispatch employees, knowing of the harassment, it never ended.

30. In fact, the three would occasionally refer to Mr. Halstead as "George" over the radio, which only further humiliated Plaintiff.

31. On or about July 27, 2023, Plaintiff submitted his two weeks' notice because the harassment was so extreme that he could no longer complete work without extreme ridicule that caused him extreme distress.

32. Defendant showed no sign of ending the hostility despite knowing it was occurring.

33. When Mr. Halstead saw Plaintiff after learning of his resignation, he raised both of his middle fingers at Plaintiff and proceeded to say "fuck you, Floppy Foot."

34. On or about August 3, 2023, Plaintiff was asked whether his personal effects were in his vehicle. When Plaintiff said no, he was told not to return to work.

35. Plaintiff was not paid for the remainder of his notice period, nor was he allowed to work for that period.

36. Defendant claimed to the Equal Employment Opportunity Commission that Defendant was unaware that Plaintiff was disabled. This is incorrect as a matter of law and as a matter of fact.

37. Plaintiff submitted a two weeks resignation notice, but rather than allow Plaintiff to complete his final two weeks of work, he was preemptively terminated out of retaliation.

38. Plaintiff raised complaints of discrimination, informed his managers that he would be forced to end his employment because of the discrimination, and was, therefore, terminated.

39. When Plaintiff's employment ended, he had accrued unused vacation time.

40. Plaintiff did not use his vacation time, and, upon information and belief, Defendant has no written policy informing Plaintiff that his vacation pay will be forfeited if his employment ends.

41. Defendant did not pay Plaintiff for his unused vacation time.

# CAUSES OF ACTION
# FIRST CLAIM

**Hostile Work Environment due to disability discrimination in violation of the Americans with Disabilities Act, the New York State Human Rights Law, and Article III of Chapter 154 of the Local Laws of the City of Buffalo**

42. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 41 with the same force as though separately alleged herein.

43. The Americans with Disabilities Act requires that employers such as Defendant prevent discrimination in the workplace.

44. The New York State Human Rights Law and the local laws of Buffalo track and expand the Americans with Disabilities Act.

45. Plaintiff is disabled.

46. Plaintiff made known to Defendant that he was disabled and Defendant did, in fact, regard Plaintiff as disabled.

47. Defendant was aware of a pattern and practice of discriminatory behavior that amounted to a hostile work environment.

48. That hostile work environment was so severe, it forced Plaintiff to end his employment, and Plaintiff was constructively discharged.

49. Plaintiff was routinely mocked and made fun of, both privately and in public in front of coworkers.

50. As such, Defendant intentionally and willfully violated Plaintiff's right to be free from discrimination, and owes Plaintiff all front pay, back pay, emotional distress damages, punitive damages as the failure to engage in the interactive process was malicious and inexcusable, attorney fees, costs, expenses, and any and all other remedies this Court deems just and proper.

## SECOND CLAIM

**Constructive Discharge as a result of disability discrimination in violation of the Americans with Disabilities Act, the New York State Human Rights Law, and Article III of Chapter 154 of the Local Laws of the City of Buffalo**

51. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 41 with the same force as though separately alleged herein.

52. The Americans with Disabilities Act requires that employers such as Defendant prevent discrimination in the workplace.

53. The New York State Human Rights Law and the local laws of Buffalo track and expand the Americans with Disabilities Act.

54. Plaintiff is disabled.

55. Plaintiff made known to Defendant that he was disabled, and Defendant did, in fact, regard Plaintiff as disabled.

56. Defendant was aware of a pattern and practice of discriminatory behavior that amounted to a hostile work environment.

57. That hostile work environment was so severe, it forced Plaintiff to end his employment, and Plaintiff was constructively discharged.

58. As such, Defendant intentionally and willfully violated Plaintiff's right to be free from discrimination, and owes Plaintiff all front pay, back pay, emotional distress damages, punitive damages as the failure to engage in the interactive process was malicious and inexcusable, attorney fees, costs, expenses, and any and all other remedies this Court deems just and proper.

## THIRD CLAIM

**Retaliation for complaints of disability discrimination in violation of the Americans with Disabilities Act, the New York State Human Rights Law, and Article III of Chapter 154 of the Local Laws of the City of Buffalo**

59. Plaintiff hereby realleges and incorporates each and every allegation contained

in paragraphs 1 through 41 with the same force as though separately alleged herein.

60. The Americans with Disabilities Act requires that employers such as Defendant prevent discrimination in the workplace.

61. The New York State Human Rights Law and the local laws of Buffalo track and expand the Americans with Disabilities Act.

62. Plaintiff is disabled.

63. Plaintiff made known to Defendant that he was disabled.

64. Plaintiff was constructively discharged as a result of the disability discrimination he faced.

65. When Plaintiff formally noticed his resignation as a result of the discrimination, Defendant withheld his vacation pay.

66. Plaintiff's pay was withheld out of retaliation.

67. When Plaintiff formally noticed his resignation as a result of the discrimination, he was terminated in advance of his two week notice period expiring.

68. As such, Defendant intentionally and willfully violated Plaintiff's right to be free from retaliation, and owes Plaintiff all front pay, back pay, emotional distress damages, punitive damages as the failure to engage in the interactive process was malicious and inexcusable, attorney fees, costs, expenses, and any and all other remedies this Court deems just and proper.

## **FOURTH CLAIM**
**Failure to pay owed, unused vacation time**

69. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 41 with the same force as though separately alleged herein.

70. Under the New York Labor Law, sections 191 through 195, employers who

offer vacation benefits must pay out those benefits to employees when their employment ends.

71. Upon information and belief, Defendant has no written policy informing employees that they forfeit their vacation pay when their employment ends.

72. Defendant did not pay Plaintiff his vacation pay when his employment ended.

73. As such, Defendant failed to pay Plaintiff owed wages, which violates the New York Labor Law.

74. As such, Defendant owes Plaintiff all vacation time unpaid to him, all liquidated damages, any penalties, attorney fees, costs, expenses, and any other form of remedy available to Plaintiff for the recovery of this vacation pay.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

B. For the second cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

C. For the third cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

D. For the fourth cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements; and

E. For such other and further relief as the Court deems just and proper.

Dated:
January 29, 2025

                                            **HARMAN GREEN PC**

By: _____
Evan Richardson
140 Broadway, Fl 46
New York, NY 10005
(646) 248-2288
erichardson@theharmanfirm.com
*Attorneys for Plaintiff*